UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARIO RODRIGUEZ,<br><br>                    Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>                    Defendant. | Case No.  1:21-cv-00249-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 22)<br><br>FOURTEEN-DAY DEADLINE |

### **Findings and Recommendations**

### **INTRODUCTION**

Plaintiff Hilario Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.

---

[1]   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal from the administrative decision.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on August 27, 2015. AR 306-07.[2] Plaintiff alleged that he became disabled on December 12, 2014, due to a back injury, tendonitis, and high blood pressure. AR 378. Plaintiff's application was denied initially and on reconsideration. AR 169-72. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing on February 8, 2018, ALJ John Trusnick issued an order denying benefits on April 17, 2018. AR 39-88, 123-37. Plaintiff sought review of the ALJ's decision. The Appeals Counsel granted the request for review, vacated the hearing decision, and remanded the matter to an ALJ. AR 144-45.

On August 20, 2019, ALJ Scot Septer held a hearing. AR 89-102. Plaintiff did not appear, but his counsel was present. AR 20, 91. ALJ Septer issued a decision denying benefits on September 24, 2019. AR 17-31. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ Septer's decision the Commissioner's final decision. AR 6-10. This appeal followed.

### **Hearing Testimony**

ALJ Septer held a hearing on August 20, 2019. Plaintiff waived his appearance, but his counsel appeared. AR 91. Cheryl R. Chandler, an impartial vocational expert ("VE"), also appeared and testified. AR 92.

At the outset of the hearing, Plaintiff's counsel clarified that the period at issue was from December 2, 2014. AR 94. The ALJ confirmed that Plaintiff's past work included truck driver and route truck driver. AR 93. The ALJ also confirmed that Plaintiff had returned to work. AR 94.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

The ALJ then asked the VE hypothetical questions. For all of the hypotheticals, the ALJ asked the VE to assume an individual of the same age, education, and vocational background as Plaintiff. AR 98. For the first hypothetical, the ALJ asked the VE to consider an individual capable of a range of work at the sedentary exertional level. This individual could stand and/or walk for two out of eight hours in an eight-hour workday, could occasionally climb ladders, ropes and scaffolds, ramps and stairs. This individual could occasionally crawl and crouch and frequently balance, stoop and kneel. This individual could not use foot controls with the right lower extremity and could not perform jobs that required the operation of a motor vehicle. This individual also could not work in environments that would expose him/her to machinery with dangerous moving mechanical parts or unprotected heights. The VE testified that this individual would not be able to perform any of Plaintiff's past work. There would be other jobs in the national economy that such an individual could perform, such as ticket counter worker, charge account clerk and telephone clerk. AR 98-99.

If the individual from the first hypothetical required the ability to adjust from a seated to standing position at will, the VE testified that about 25% of the jobs cited would allow a for a sit/stand option. AR 99-100. If the sit/stand behavior resulted in the individual being off task for 10% of the workday, then there would be no jobs available. AR 100. If the individual missed two days per month due to pain, then the individual could not perform any work. AR 101.

For the second hypothetical, the ALJ asked the VE to consider an individual with the same limitations as in hypothetical one, but add that the individual was precluded from stooping and would have to a 10-minute break every hour. The VE testified that this individual could not perform any of the jobs previously identified. AR 100-01.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act from December 12, 2014, through the date of the ALJ's decision. AR 20-31. Specifically, the ALJ found that Plaintiff had

engaged in substantial activity from November 15, 2016, through the date of the ALJ's decision, and Plaintiff was therefore not disabled at step one of the sequential evaluation for the period beginning November 15, 2016. AR 22-23. However, the ALJ determined that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. AR 23. For the relevant period, the ALJ identified the following severe impairments: degenerative disc disease of the lumbar and thoracic spine and tendonitis of the right elbow. AR 23-24. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 24-25.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of work at the sedentary exertional level. He could lift and carry 10 pounds occasionally and less than 10 pounds frequently, could stand and/or walk two hours, and could sit for six hours total in an eight-hour workday. He could frequently balance, stoop, and kneel and he can occasionally crawl, crouch, and climb ramps, stairs, ladders, ropes, and scaffolds. He could not operate foot controls with the right lower extremity and should not work in environments exposing him to unprotected heights or machinery with dangerous moving mechanical parts. AR 25-29. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs in the national economy that Plaintiff could perform, such as ticket counter worker, charge account clerk and telephone clerk. AR 29-31. The ALJ therefore concluded that Plaintiff was not disabled. AR 31.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the

4

Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ's step-three determination that Plaintiff's impairments did not meet or equal listing 1.04(A) is not supported by substantial evidence. Plaintiff also contends that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptomology evidence.

**A. Step Three**

Plaintiff first argues that there is substantial evidence that his degenerative disc disease of the lumbar and thoracic spine met or equaled the requirements of listing 1.04(A), disorders of the spine, at step three of the sequential evaluation. (Doc. 22 at 11.)

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *Id.* (citing 20 C.F.R. § 404.1525). If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. *Id.* (citing 20 C.F.R. § 404.1520(d)).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. *Id.* "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant's impairment or combination of impairments meets or exceeds a "listing," no specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs. 20 C.F.R. § 404.1520(d).

Plaintiff contends that he met listing 1.04(A).  (Doc. 22 at 11.)  Listing 1.04(A) for disorders of the spine requires evidence of (1) nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness), accompanied by sensory or reflex loss; and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 1.04(A).

At step three, the ALJ determined that Plaintiff's impairments, considered singly and in combination, did not meet the criteria of any listed impairment.  In reaching that conclusion, the ALJ "considered listing 1.02 for a major dysfunction of a joint (due to any cause) and listing 1.04 for disorders of the spine."  AR 24.  The ALJ reasoned as follows:

> The medical evidence does not document listing-level severity, and no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.  A more detailed discussion of the evidence is embodied in the residual functional capacity analysis . . . .

AR 25.

In his briefing, Plaintiff argues that he met the criteria of listing 1.04(A), asserting that the record documents show objective evidence of multiple level degenerative disc disease with nerve root compression, neuroanatomic distribution of pain, decreased range of motion, sensory loss, and positive straight leg raising (sitting). (Doc. 22 at 11-13.) The Commissioner counters that Plaintiff fails to show that these elements were found to be present simultaneously or that they meet the durational requirement. (Doc. 25 at 9.) The Commissioner also argues that Plaintiff fails to allege or prove any motor loss, shown by muscle weakness. (*Id.*) As to this latter point, Plaintiff's reply proffers no evidence demonstrating the presence of motor loss (atrophy with associated muscle weakness or muscle weakness). (Doc. 29 at 3.)

Having considered the medical record and the ALJ's decision, the Court finds that Plaintiff has failed to satisfy his burden to meet the specified medical criteria for listing 1.04(A). *Sullivan*, 493 U.S. at 530. Specifically, Plaintiff fails to forward sufficient evidence demonstrating motor loss (atrophy with associated muscle weakness or muscle weakness). Indeed, as the ALJ noted, Plaintiff's clinical examinations identified no atrophy. *See* AR 26, 657 (June 2015; no atrophy), 664 (April 2015; no atrophy), 711 (February 2015; no atrophy), 1218 (August 2017; no atrophy). Plaintiff also generally exhibited full strength in his extremities and no muscle weakness. AR 26, 541-42 (November 2015; muscle testing grossly intact), 631-32 (same), 810 (April 2016; motor strength 5/5 throughout, muscle bulk and tone normal with no atrophy), 934 (June 2016; left extensor digitorum brevis smaller than the right, but individual muscle testing otherwise normal); 936 (June 2016; normal EMG of the bilateral lower limbs); 857-58 (June 2017; grade 5 equal and symmetrical muscle strength lower extremities), 1232 (October 2017; 5/5 strength in bilateral lower extremities); 1233 (October 2017; lower limb motor and sensory nerve conduction study normal), 955 (April 2019; normal muscle strength in the extremities).

Plaintiff's primary argument appears to be that the ALJ committed harmful error by failing to discuss the evidence "in relation to the specific aspects of Listing 1.04A … [and] making only a blanket, boilerplate finding absent any discussion of the requirements of Listing 1.04 or the related evidence at issue." (Doc. 22 at 13 (emphasis in original omitted). This assertion is not persuasive. The ALJ was not required to explain why Plaintiff failed to satisfy each section of a listing. In

*Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990), the Ninth Circuit considered the question of whether the ALJ erred by failing to state what evidence supported the conclusion that the claimant's impairments did not meet or exceed the Listing of Impairments. 914 F.2d at 1200. In considering this question, the Ninth Circuit held that "[i]t is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Id.* at 1201. Instead, the Ninth Circuit found that the ALJ's four-page evaluation of the evidence was an adequate statement of the foundations on which the ultimate factual conclusions were based and upheld the step three finding. *Id.* Here, as in *Gonzalez*, the ALJ's four-page examination of the evidence is sufficient to support the step three finding.

Plaintiff's reliance on *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001), and *Frost v. Barnhart*, 314 F.3d 359 (9th Cir. 2002), is misplaced. *Lewis* and *Frost* are distinguishable. Plaintiff cites *Lewis* in support of the proposition that a boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet or equal a listing. (Doc. 22 at 13.) Although Plaintiff correctly notes that *Lewis* precludes a boilerplate determination, *Lewis* also made clear that an ALJ's step three evaluation need not be included in a "Findings" section and instead could be supported by evidence showing an impairment did not meet or equal a listing within the "Statement of the Case." *Lewis*, 236 F.3d at 513 ("Although he did not recite it in his decision's brief 'Findings,' the ALJ did note in his 'Statement of the Case' repeated evidence that Lewis did not comply with his prescribed treatment."). Indeed, in *Lewis*, the Ninth Circuit confirmed that an ALJ is simply required "to discuss and evaluate the evidence that supports his or her conclusion," and such discussion and evaluation need not be contained in a particular section of the ALJ's decision. *Id.* As in *Lewis*, the ALJ here discussed and evaluated evidence supporting his conclusion that Plaintiff's impairment(s) did not meet listing 1.04(A). This included specific discussion and evaluation of evidence regarding generally normal motor and sensory nerve conduction studies and clinical examinations showing no atrophy and full strength in his bilateral extremities. AR 26.

Plaintiff similarly relies on *Frost* to argue that the ALJ was required to discuss the requirements of the listing and consider the listing's possible application. In *Frost*, the Ninth Circuit determined that the ALJ's failure to evaluate the claimant's paranoid schizophrenic disorder under

section 12.03 of the listings warranted remand. *Frost*, 314 F.3d at 362. The court acknowledged that while the ALJ reviewed listing 12.06, she did not review listing 12.03, and it was possible that the claimant satisfied the requirements of 12.03A and 12.03B during the relevant period and, if so, satisfied the threshold requirements for consideration under 12.03C. *Id.* at 363. Because the ALJ did not evaluate the claimant "at all under section 12.03," the court found reversible error. *Id.* at 363-64. Here, unlike in *Frost*, the ALJ did not fail to mention or even evaluate whether Plaintiff met the requirements of listing 1.04(A). Instead, the ALJ expressly mentioned and "considered listing 1.02 for a major dysfunction of a joint (due to any cause) and listing 1.04 for disorders of the spine." AR 24. In so doing, the ALJ specifically found that the medical evidence did not "document listing-level severity, and no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." AR 24-25. The ALJ further indicated that a more detailed discussion of the evidence was embodied in the RFC analysis. AR 25.

As a final matter, Plaintiff argues that "assuming arguendo, the severity of Mr. Rodriguez's DDD did not strictly *meet* the requirements of 1.04A at step three, during the period at issue, the ALJ also harmfully erred by failing to discuss the substantial evidence of record . . . regarding the limitations of DDD **combined** with the additional ALJ-determined 'severe' impairments at step two of tendonitis of the right elbow (AR 23) in terms of equaling the requirements of Listing 1.02A." (Doc. 22 at 14) (emphasis in original). Plaintiff's argument lacks merit. The ALJ considered whether Plaintiff's impairments met or equaled the requirements of listings 1.02 and 1.04. AR 24. Indeed, as to an equivalency determination, the ALJ also concluded that "no acceptable medical source mentioned findings *equivalent* in severity to the criteria of any listed impairment, *individually or in combination*." AR 25 (emphasis added). Moreover, Plaintiff does not refer to specific evidence that the ALJ failed to consider. (Doc. 22 at 14.)

For these reasons, the Court finds that the ALJ did not commit reversible error at step three of the sequential evaluation.

///

///

///

**B. Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ committed harmful error by failing to provide clear and convincing reasons to reject evidence supporting symptomology of severe pain and limitations. (Doc. 22 at 15.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 29. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

In asserting error, Plaintiff first contends that the ALJ harmfully failed to detail or summarize Plaintiff's testimony from his first hearing in February 2018 (AR 39-88). (Doc. 22 at 15.) Plaintiff cites no authority to support this contention and there is no indication that the ALJ failed to consider Plaintiff's allegations.

The crux of Plaintiff's argument appears to be that the ALJ failed to consider testimony "detailing the extent of [Plaintiff's] pain and limitations during the period at issue." (*Id.* at 16.) However, the ALJ expressly considered that "claimant allege[d] suffering from significant limitations, which prohibited him from working from December 12, 2014 through November 14, 2016." AR 29.

The ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ determined that Plaintiff's statements and allegations were not fully consistent with the medical and other evidence in the record. AR 29. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). For instance, the ALJ considered

Plaintiff's report in November 2015 that he could only stand for three to five minutes at a time and walk for five minutes outside his home. AR 29, 388. The ALJ determined that the record, including the findings of the consultative examiner, Dr. Tomas Rios, which showed a normal gait with full strength in the extremities did not support this allegation. AR 29. The ALJ's determination is supported by substantial evidence based on Dr. Rios' consultative examination on April 12, 2016. During the physical examination, Plaintiff was able to move about the office with minimal difficulty. His station was normal and heel, toe, and tandem gait were negative. AR 809. His straight leg raising was negative to 80 degrees bilaterally while sitting and supine. He had no atrophy in the lower extremities, his muscle strength was 5/5 throughout the lower muscle groups and his muscle bulk and tone were normal. AR 810.

The ALJ also considered Plaintiff's allegations that his limitations prevented him from working, but found those allegations inconsistent with the evidence, including the findings and opinion of the consultative examiner, Dr. Rios, and the state-agency physician, Dr. G. Bugg. AR 29. The ALJ reasonably concluded that Dr. Rios' findings and opinion contradicted Plaintiff's allegations of work-preclusive limitations. In addition to the objective findings identified above, Dr. Rios' examination also found that Plaintiff's grip strength was 5/5, his sensory exam was grossly intact throughout the upper and lower extremities and his reflexes were symmetrical at 2+. Plaintiff had tenderness along the lumbar spine with spasms, but no clinical findings of nerve root compromise. AR 810-11. Dr. Rios opined that Plaintiff could stand up to six hours, walk up to six hours, sit without limitations, could lift and carry 20 pounds occasionally and 10 pounds frequently, could occasionally climb steps, stairs, ladders, scaffolds, and ropes, could frequently stoop, crouch, kneel, and crawl and had no manipulative limitations. AR 811.

Similarly, Dr. G. Bugg, the state agency physician, opined in April 2016 that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, could frequently balance, stoop, and kneel, could occasionally crouch and crawl, and had no manipulative limitations. AR 118-19. The ALJ properly considered that this opinion was inconsistent with Plaintiff's assertion that his limitations prevented him from working.

11

Additionally, the ALJ determined that Plaintiff's allegation of significant limitations was inconsistent with clinical examination findings that were otherwise unremarkable and showed no significant gait disturbance or neurological dysfunction. AR 29, 540-41 (ambulation not grossly altered, heel and toe walk bilateral within normal limits; neurological findings), 567 (negative toe and heel walk; positive bilateral nerve stretch test and mildly impaired sensation to light touch noted along the right lateral thigh compared to the left), 584 (same), 597 (upright posture and non-antalgic gait, negative toe and heel walk; positive bilateral nerve stretch test and mildly impaired sensation to light touch noted along the right lateral thigh compared to the left), 630-31, 664, 681, 687, 711, 895, 905-06.

Second, the ALJ considered that Plaintiff's alleged inability to work was inconsistent with his reported daily activities. AR 29. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113. Plaintiff reported to Dr. Rios that he could drive a vehicle, helped with household chores and meal preparation, did his own yard work and shopping, and was independent with activities of daily living. AR 808. The ALJ properly considered this report regarding Plaintiff's daily activities to be inconsistent with totally disabling limitations. AR 29, 808.

For these reasons, the Court finds that the ALJ did not commit reversible error in evaluating Plaintiff's subjective complaints.

### **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and

    2.    The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Hilario Rodriguez.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:    **October 4, 2022**        /s/ *Barbara A. McAuliffe*
                                                                             UNITED STATES MAGISTRATE JUDGE